Andrew Rozynski, Esq.
EISENBERG & BAUM, LLP
24 Union Square East, Fourth Floor
New York, NY 10003
212-353-8700 (tel.)
212-353-1708 (fax)
arozynski@eandblaw.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

---

| | |
|---|---|
| DEBRA PRINCE<br><br>Plaintiff,<br><br>v.<br><br>CAREONE LLC, CAREONE AT WELLINGTON, CAREONE AT ORADELL, JDT OUTPATIENT REHAB CENTER LLC, JDT MEDICAL REHAB CENTER<br><br>Defendants. | Civ. No.  19-1188<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

---

Plaintiff, DEBRA PRINCE, by and through her undersigned counsel, EISENBERG & BAUM, LLP, hereby files this Complaint against Defendants, CARE ONE LLC, CAREONE AT WELLINGTON, CAREONE AT ORADELL, JDT OUTPATIENT REHAB CENTER LLC, and JDT MEDICAL REHAB CENTER and alleges as follows:

### PRELIMINARY STATEMENT

1. Plaintiff DEBRA PRINCE is profoundly deaf and communicates primarily in American Sign Language ("ASL"), which is her expressed, preferred, and most effective means of communication. Her deafness impacted her ability to learn and acquire language from an early

1

age, and as a result, she has difficulty communicating in English.[1] Plaintiff is likewise unable to effectively communicate by reading lips.[2] Defendants CAREONE LLC, CAREONE AT WELLINGTON, and CAREONE AT ORADELL run assisted living communities and are health care providers in the state of New Jersey who offer a spectrum of living accommodations and health services. Defendant JDT MEDICAL REHAB CENTER helps patients recover from injuries and surgeries assisting them in relearning activities of daily living with its principal place of business in Lincoln Park, New Jersey.

2. Defendants both hindered and prevented Plaintiff from benefitting from their services, and discriminated against Plaintiff unlawfully, on the basis of Plaintiff's disability of deafness by refusing to provide the ASL interpreters that Plaintiff required to understand and participate in Debra Prince's medical care during her post-operation rehabilitation at Defendants' facilities. This denial was in spite of Plaintiff's repeated requests for an interpreter.

3. Based on Plaintiff's allegations herein, it is evident that Defendants have failed to implement policies, procedures, and practices respecting the civil rights and communication needs of deaf individuals. Plaintiff brings this lawsuit to compel Defendants to cease unlawful discriminatory practices and implement policies and procedures that will ensure effective communication, full and equal enjoyment, and a meaningful opportunity for deaf individuals to

---

[1] Due to physical, environmental, and pedagogical factors, many deaf individuals have difficulty acquiring spoken languages such as English. Indeed, the median reading level of deaf high school graduates is fourth grade. This is because many deaf people acquire English as their second language (after ASL or another form of sign language) well past the critical developmental period of language acquisition.

[2] Lip-reading, or the ability to understand the speech of another by watching the speaker's lips, is an extremely speculative means of communication and is no substitute for direct communication through a qualified sign language interpreter. Only a small number of spoken sounds in aural language are visible, and many of those words appear identical on the lips. Even if a primary ASL user were able to determine the sounds appearing on a speaker's lips, he or she would still not necessarily understand the English language as English and ASL are distinct languages with disparate grammatical structures.

participate in and benefit from Defendants' health care services.

4. Plaintiff brings this action seeking declaratory, injunctive, and equitable relief; compensatory damages; and attorneys' fees and costs to redress Defendants' unlawful discrimination against Plaintiff on the basis of her disability in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq.; Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794; Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116; the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. §§ 10:5-1, et seq.

## THE PARTIES

5. Plaintiff DEBRA PRINCE brings this action as an individual residing in Little Ferry, New Jersey. Plaintiff is a profoundly deaf individual who has limited English proficiency and primarily communicates in American Sign Language. Plaintiff is substantially limited in the major life activities of hearing and speaking and is an individual with a disability within the meaning of federal and state civil rights laws.

6. Defendant CAREONE LLC, is a corporation with a corporate address at 173 Bridge Plaza, North Fort Lee, NJ 07024 Upon information and belief, Defendants own and operates Defendant CAREONE AT WELLINGTON located at 301 Union St, Hackensack, NJ 07601 and Defendant CAREONE AT ORADELL located at 301 Union St, Hackensack, NJ 07601. Upon information and belief, Defendants are the recipients of federal financial assistance, including Medicare and/or Medicaid reimbursements.

7. Defendant JDT OUTPATIENT REHAB CENTER LLC is a corporation with a corporate address at 503 Pine Brook Rd, Lincoln Park, NJ 07035. Upon information and belief, Defendants own and operates Defendant JDT MEDICAL REHAB CENTER, located at 503 Pine

Brook Rd, Lincoln Park, NJ 07035. Upon information and belief, Defendants are the recipients of federal financial assistance, including Medicare and/or Medicaid reimbursements

**JURISDICTION & VENUE**

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under the laws of the United States, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for Plaintiff's claims arising under state and local laws.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants are residents of this district, and because Defendants have sufficient contacts with this District to subject it to personal jurisdiction and had those contacts at the time this action is commenced, and the acts and omissions giving rise to this Complaint occurred within this District.

**STATEMENT OF FACTS**

10. Plaintiff Debra Prince ( hereinafter "Plaintiff" or "Ms. Prince" is a profoundly deaf individual who communicates primarily in American Sign Language (ASL).

11. Plaintiff has limited proficiency in English, cannot effectively communicate by reading lips, and requires qualified sign language interpreters to communicate effectively in a medical setting.

12. On or around March 3, 2017 Plaintiff entered CareOne at Wellington after knee surgery.

13. Prior to Plaintiff's arrival at CareOne at Wellington, it was informed Defendant she was deaf.

14. Upon her arrival, Ms. Prince requested a sign language interpreter so that she could effectively communicate.

4

15. Defendant, CareOne at Wellington, made a deliberate choice to not provide Ms. Prince with a qualified sign language interpreter, throughout her stay, despite Ms. Prince's repeated requests for a sign language interpreter.

16. Plaintiff was admitted at CareOne at Wellington for a total of nine days before her discharge on March 18, 2017.

17. During Ms. Prince's nine day stay at Defendant's CareOne at Wellington facility, she was not provided an interpreter on any occasion, despite repeated requests to various staff.

18. Defendant CareOne at Wellington, instead chose to attempt to ineffectively communicate with Ms. Prince via short written notes and sporadic lip-reading.

19. Due to the lack of qualified sign language interpreters, Ms. Prince was not able to meaningfully engage in treatment.

20. Additionally, Ms. Prince was unable to communicate any of most of her questions, concerns, or needs regarding her treatment to Defendant, CareOne at Wellington's, staff due to the lack of qualified sign language interpreters.

21. On or around December 14, 2017 Plaintiff fell, badly cut her knee, re-aggravated her previous knee injury, and required surgery on her knee again at CareOne at Oradell.

22. Prior to her arrival at CareOne at Oradell, the hospital where her surgery was done informed Defendant she was deaf.

23. Upon her arrival, Ms. Prince requested a sign language interpreter so that she could effectively communicate.

24. Defendant, CareOne at Oradell, made a deliberate choice to not provide Ms. Prince with a qualified sign language interpreter, throughout most of her stay, with few exceptions despite Ms. Prince's repeated requests for a sign language interpreter.

25. Plaintiff was admitted at Defendant's CareOne at Oradell for a total of ten days before her discharge on December 24, 2017.

26. While there were a few occasions in which an interpreter was provided for physical therapy, at all other times in Defendant CareOne at Oradell's, facility, Plaintiff was not provided an interpreter on any other occasion, despite repeated requests to various staff

27. Throughout the ten day stay at Defendant's facility, Plaintiff mostly communicated via short handwritten notes and sporadic lip-reading with Defendant's. This was not an effective means of communication for Ms. Prince.

28. Due to the lack of qualified sign language interpreters or other auxiliary aids or services Ms. Prince was not able to meaningfully engage in treatment.

29. Additionally, Ms. Prince was unable to communicate any of most of her questions, concerns, or needs regarding her treatment to Defendant, CareOne at Oradell's, staff due to the lack of qualified sign language interpreters.

30. On or around December 28, 2017 Plaintiff was admitted into Defendant's JDT Medical Rehab Center (hereinafter JDT or Defendant(s)) for rehabilitation services relating to her knee surgeries.

31. Prior to her arrival at JDT, the hospital where her surgery was done informed JDT that Ms. Prince was deaf.

32. Upon her arrival, Ms. Prince requested a sign language interpreter so that she could effectively communicate.

33. While there were a few occasions in which an interpreter was provided for physical therapy, at all other times in Defendant JDT's, facility, Plaintiff was not provided an interpreter on any other occasion, leading up to her eventual discharge on January 17, 2018,

despite repeated requests to various staff

34. Throughout most of her stay at Defendant's facility, Plaintiff communicated via handwritten notes and lip-reading with Defendant's. This was not an effective means of communication for Ms. Prince.

35. Due to the lack of interpreters or other auxiliary aids or services Ms. Prince was not able to meaningfully engage in treatment. Additionally, Ms. Prince was unable to communicate any of her questions, concerns, or needs regarding her treatment to hospital staff due to the lack of interpreters or other auxiliary aids or services.

36. Plaintiff was admitted at JDT for almost three weeks before her discharge on January 17, 2018.

37. During her stay, Ms. Davis recalls requesting an interpreter on numerous occasions. One such request was met with "scolding" and "yelling" from a nurse due to Ms. Davis requesting an interpreter for more effective communication as she became frustrated with writing back and forth.

38. In most instances, effective communication could not have taken place between Plaintiff and Defendants' staff without the aid of a qualified ASL interpreter.

39. Indeed, as a result of Defendants' failure to provide effective auxiliary aids and services, Plaintiff did not understand the purposes of the treatments being provided; the common risks and/or benefits of those treatments; the common risks, side effects, and benefits of medications given; the specific dosage instructions for medications given; the existence of any alternative treatments; the approximate length of care; the potential side effects of stopping treatment; the details of any aftercare or discharge instructions; etc.

40. Defendants' discrimination against Plaintiff, and Plaintiff's resulting lack of

understanding of her medical care, caused Plaintiff to suffer humiliation, anger, frustration, stress, anxiety, and emotional distress.

41. Defendants and Defendants' staff knew that Plaintiff is deaf and were aware that Plaintiff made repeated requests for interpreters.

42. Defendants also knew or should have known of their obligation as a health care provider under the ADA, the RA, and NJLAD to develop policies to promote compliance with these statutes and to provide reasonable accommodations, including but not limited to the provision of ASL interpreters to ensure effective communication with deaf persons.

43. Defendants and their staff knew or should have known that their actions and/or inactions created an unreasonable risk of causing Plaintiff greater levels of fear, anxiety, indignity, humiliation, and/or emotional distress than a hearing person would be expected to experience.

44. Nonetheless, Defendants prevented Plaintiff from benefitting from its services by failing to provide the ASL interpreters necessary for her participation and care.

45. In doing so, Defendants intentionally discriminated against Plaintiff and acted with deliberate indifference to her federally protected rights.

46. Defendants' wrongful and intentional discrimination against Plaintiff on the basis of her disability is reflected by Defendants' failure to train employees and promulgate policies of non-discrimination against deaf individuals.

47. As a result of Defendants' failure to ensure effective communication with Plaintiff, Plaintiff received services that were objectively substandard and that were inferior to those provided to patients who are hearing.

48. Plaintiff is entitled to equal access to services offered by Defendants as are

enjoyed by non-disabled persons.

49. Plaintiff still wishes to access Defendants' services and receive care in Defendants' facilities, but is being prevented from doing so by Defendants' discrimination against her on the basis of her disability.

### CLAIM I: VIOLATIONS OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

50. Plaintiff repeats and re-alleges all preceding paragraphs in support of this claim.

51. At all times relevant to this action, Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181, et seq. has been in full force and effect and has applied to Defendants' conduct.

52. At all times relevant to this action, Plaintiff has been substantially limited in the major life activities of hearing and speaking, and has been an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(2).

53. Defendants own, lease, and/or operate a place of public accommodation within the meaning of Title III of the ADA, 42 U.S.C. § 12181(7)(D).

54. Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

55. Title III of the ADA defines discrimination to include "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 42 U.S.C. § 12182(b)(2)(A)(iii).

56. Federal regulations implementing Title III of the ADA provide that "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. This includes an obligation to provide effective communication to companions who are individuals with disabilities" 28 C.F.R. § 36.303(c).

57. Defendants discriminated against Plaintiff, on the basis of disability, in violation of Title III of the ADA and its implementing regulations.

58. Defendants have failed to implement policies, procedures, and training of staff necessary to ensure compliance with Title III of the ADA and its implementing regulations.

59. Plaintiff is therefore entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1).

### CLAIM II: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

60. Plaintiff repeats and re-alleges all preceding paragraphs in support of this claim.

61. At all times relevant to this action, Section 504 of the Rehabilitation, 29 U.S.C. § 794, has been in full force and effect and has applied to Defendants' conduct.

62. At all times relevant to this action, Plaintiff has had substantial limitations to the major life activities of hearing and speaking and has been individuals with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9).

63. At all times relevant to this action, Defendants have been a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

64. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any

program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

65. The Rehabilitation Act extends relief to "any person aggrieved" by discrimination in violation thereof. 29 U.S.C. § 794a(a)(2).

66. Defendants discriminated against Plaintiff, on the basis of disability, in violation of the Rehabilitation Act and its implementing regulations.

67. Defendants have failed to implement policies, procedures, and training of staff necessary to ensure compliance with the Rehabilitation Act and its implementing regulations.

68. Plaintiff is therefore entitled to injunctive relief; attorneys' fees, costs, and disbursements; and compensatory damages for the injuries and loss she sustained as a result of Defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

## CLAIM III: VIOLATIONS OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT

69. Plaintiff repeats and re-alleges all preceding paragraphs in support of this claim.

70. At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act has been in full force and effect and has applied to the Defendants' conduct.

71. At all times relevant to this action, Plaintiff has had substantial limitations to the major life activities of hearing and speaking and has been an individual with a disability within the meaning of Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116.

72. At all times relevant to this action, Plaintiff's primary language for communication has been American Sign Language (and not English), and Plaintiff has had limited ability to read, write, speak, or understand English. Plaintiff has therefore been an individual with limited English proficiency within the meaning of Section 1557 of the Patient

Protection and Affordable Care Act, 45 C.F.R. § 92.4.

73. At all times relevant to this action, Defendants received federal financial assistance, including Medicare and/or Medicaid reimbursements, and have been principally engaged in the business of providing health care. Therefore, Defendants are a health program or activity receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a).

74. Pursuant to Section 1557 of the Patient Protection and Affordable Care Act, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116.

75. Federal regulations implementing Section 1557 of the Patient Protection and Affordable Care Act provide that "[a] covered entity shall take reasonable steps to provide meaningful access to each individual with limited English proficiency eligible to be served or likely to be encountered in its health programs and activities." 45 C.F.R. § 92.201.

76. Federal regulations implementing Section 1557 of the Patient Protection and Affordable Care Act provide that "(1) A covered entity shall offer a qualified interpreter to an individual with limited English proficiency when oral interpretation is a reasonable step to provide meaningful access for that individual with limited English proficiency; and (2) A covered entity shall use a qualified translator when translating written content in paper or electronic form." 45 C.F.R. § 92.201(d).

77. Federal regulations implementing Section 1557 of the Patient Protection and Affordable Care Act provide that "[a] covered entity that provides a qualified interpreter for an individual with limited English proficiency through video remote interpreting services in the

covered entity's health programs and activities shall provide: (1) Real-time, full-motion video and audio over a dedicated high-speed, wide-bandwidth video connection or wireless connection that delivers high-quality video images that do not produce lags, choppy, blurry, or grainy images, or irregular pauses in communication; (2) A sharply delineated image that is large enough to display the interpreter's face and the participating individual's face regardless of the individual's body position; (3) A clear, audible transmission of voices; and (4) Adequate training to users of the technology and other involved individuals so that they may quickly and efficiently set up and operate the video remote interpreting." 45 C.F.R. § 92.201(f).

78. Federal regulations implementing Section 1557 of the Patient Protection and Affordable Care Act provide that "[a] covered entity shall take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others in health programs and activities." 45 C.F.R.§ 92.202(a).

79. Federal regulations implementing Section 1557 of the Patient Protection and Affordable Care Act provide that "(1) A [covered] entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a [covered] entity. . . . In determining what types of auxiliary aids and services are necessary, a public entity shall give primary consideration to the requests of individuals with disabilities. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 45 C.F.R.§ 92.202(a); 28 C.F.R. § 35.160(b).

80. As set forth above, Defendants discriminated against Plaintiff, on the basis of

disability, in violation of the Patient Protection and Affordable Care Act and its implementing regulations.

81. The Patient Protection and Affordable Care Act, by incorporating the enforcement mechanism of the Rehabilitation Act, extends a cause of action to "any person aggrieved" by discrimination in violation thereof. 42 U.S.C. § 18116(a).

82. Defendants have failed to implement policies, procedures, and training of staff necessary to ensure compliance with the Patient Protection and Affordable Care Act.

83. Plaintiff is therefore entitled to injunctive relief; attorneys' fees, costs, and disbursements; and compensatory damages for the injuries and loss they sustained as a result of Defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 42 U.S.C. § 18116(a).

### CLAIM IV: VIOLATIONS OF THE NEW JERSEY LAW AGAINST DISCRIMINATION

84. Plaintiff repeats and reiterates every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth at length herein.

85. At all times relevant to this action, the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. §§ 10:5-1, et seq., was in full force and effect and applied to the Defendant's conduct.

86. At all times relevant to this action, Plaintiff hz been a person with a disability within the meaning of N.J.S.A. §§ 10:5-5(q) and 10:5-5(w).

87. At all times relevant to this action, Defendant's facilities were places of public accommodation within the meaning of N.J.S.A. § 10:5-5(l).

88. Pursuant to N.J.S.A. § 10:5-12(f)(1), it shall be unlawful discrimination "for any

owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation directly or indirectly to refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or to discriminate against any person in the furnishing thereof . . . on account of . . . disability."

89. Plaintiff is an aggrieved person within the meaning of N.J.S.A. § 10:5-13, which extends relief to "any person claiming to be aggrieved" by the discrimination of a person on the basis of his or her disability.

90. Defendants discriminated against Plaintiff on the basis of their disability by denying access to full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations of their place of public accommodation and equal opportunity to participate in and benefit from Defendant's health care services in violation of N.J.S.A. § 10:5-1, et seq.

91. Defendants further discriminated against Plaintiff by failing to ensure effective communication through the specific provision of a qualified in-person interpreter.

92. As set out above, absent injunctive relief there is a clear risk that Defendants' actions will recur with Plaintiff and/or additional Deaf persons.

93. Plaintiff is therefore entitled to seek and recover compensatory damages for the injuries and loss they sustained as a result of Defendant's discriminatory conduct as hereinbefore alleged pursuant to N.J.S.A. § 10:5-13.

94. Plaintiff is further entitled to an award of punitive damages pursuant to N.J.S.A. § 10:5-3.

95. Plaintiffs is further entitled to an award of attorney's fees, costs, and disbursements pursuant to N.J.S.A. § 10:5-27.1.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays that this Court grant the following relief:

a. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' policies, procedures, and practices have subjected Plaintiff to unlawful discrimination in violation of Title III of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act; Section 1557 of the Patient Protection and Affordable Care Act; and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. §§ 10:5-1, et seq.

b. Issue an injunction forbidding Defendants from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals, or their companions, meaningful access to and full and equal enjoyment of Defendants' facilities, services, or programs;

c. Issue an injunction ordering Defendants:

i. to develop, implement, promulgate, and comply with a policy requiring that when a deaf or hard of hearing individual requests an in-person interpreter for effective communication, one will be provided as soon as practicable in all services offered by Defendants;

ii. to develop, implement, promulgate, and comply with a policy to ensure that Defendants will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly marked and worded notices that Defendants will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

iii. to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard of hearing individuals are able to communicate through the most appropriate method under the

circumstances, recognizing that the VRI is not appropriate in all medical situations;

    iv. to develop, implement, promulgate, and comply with a policy to ensure, in the event the Defendants utilize a Video Remote Interpreting System ("VRI"), that such system has a high-speed Internet connection; a video screen with appropriate size, position, capture angle, focus, and proximity to the deaf individual; and appropriate audio quality. When possible, the equipment should be portable and made available to the patient where the patient is located, preferably in a private room to minimize distractions and maintain confidentiality;

    v. to train all their employees, staffs, and other agents on a regular basis about how to properly use VRI services (including how to set up the VRI system and how to obtain technical assistance in case of system malfunction or failure) and how to obtain interpreters when reasonably requested by deaf or hard of hearing individuals;

    vi. to create and maintain a list of sign language interpreters and ensure availability of such interpreters at any time of day or night;

    vii.    to train all employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the ADA, the RA, the ACA, N.J.S.A.

    d.    Award to Plaintiffs:

    i. Compensatory damages pursuant to the ACA and the RA, as well as pursuant to the N.J.S.A.;

    ii.  Punitive damages pursuant to the N.J.S.A.

    iii. Reasonable costs and attorneys' fees pursuant to the ADA, the RA, and the ACA and the N.J.S.A.;

    iv. Interest on all amounts at the highest rates and from the earliest dates allowed by law;

    v. Any and all other relief that this Court finds necessary and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.


Dated: January 28, 2019

                                Respectfully submitted,

                                By:

                                Andrew Rozynski, Esq.
                                arozynski@eandblaw.com

                                EISENBERG & BAUM, LLP
                                24 Union Square East, Fourth Floor
                                New York, NY 10003
                                212-353-8700 (tel.)
                                212-353-1708 (fax)
                                *Attorneys for Plaintiff*